IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN SHEERAN and KELLY SHEERAN, | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | |
| v. | Civil No. 14-5482 (JBS/AMD) |
| BLYTH SHIPHOLDING S.A., et al. | **OPINION** |
| Defendants. | |

APPEARANCES:

Brian D. Kent, Esq.
LAFFEY BUCCI & KENT LLP
1435 Walnut Street, 7th Floor
Philadelphia, PA 19102
      -and-
Bruce David Zeidman, Esq.
COSKY & ZEIDMAN, Attorneys at Law
209 Haddon Ave.
Haddonfield, NJ 08033
      Attorneys for Plaintiffs

Patrick M. Northen, Esq.
Francis P. Maneri, Esq.
Jordan M. Rand, Esq.
DILWORTH PAXSON, LLP
457 Haddonfield Road, Suite 700
Cherry Hill, NJ 08002
      Attorneys for Defendant Holt Logistics Corp.

**SIMANDLE**, Chief Judge:

I.    **INTRODUCTION**

Plaintiff Steven Sheeran filed this action under the

Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §

905(b), after he was injured while working aboard the M/V Swan

Chacabucco in the Port of Gloucester, New Jersey. His Complaint

names a number of different defendants and alleges that all
defendants were negligent by collectively breaching two dozen
different duties.

Presently before the Court is a motion to dismiss under
Fed. R. Civ. P. 12(b)(6) and a motion for sanctions under Fed.
R. Civ. P. 11(c) by Holt Logistics Corp. [Docket Items 36 & 53.]
Defendant argues that the Complaint must be dismissed because it
fails to place Defendant on notice of the particular claims
against it, and that sanctions are warranted because the claims
against Holt Logistics are entirely groundless. For the reasons
set forth below, the Court will grant Defendant's motion to
dismiss but will deny Defendant's motion for sanctions.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' Complaint (Second Amended Complaint ("SAC")
[Docket Item 15]) is short and straightforward.[1] On January 13,
2012, Steven Sheeran was working in the hold of the vessel M/V
Swan Chacabucco ("the Swan Chacabucco" or "the Ship"), which was
berthed in the Port of Gloucester, when his leg was crushed
underneath a crane-controlled tray, causing permanent and severe
injuries. (SAC ¶¶ 18-19; 22.) He subsequently brought this

---

[1] The facts are taken from Plaintiffs' Second Amended Complaint
("SAC"). For purposes of this motion, the Court must accept
Plaintiffs' allegations as true.

2

action,[2] which named eight business entities as defendants in the Second Amended Complaint, including Holt Logistics Corp. ("Holt Logistics").[3]

Before Holt Logistics Corp. filed the instant motions, the parties had agreed to dismiss three of the entities from the case. (See Mar. 11, 2015 Stip. [Docket Item 30] ¶ 4). A fourth has since been dismissed (see June 29, 2015 Stip. [Docket Item 46]), leaving only Blyth Shipholding S.A. ("Blyth Shipholding"), Inchape Shipping Services ("Inchape Shipping"), NYK Cool a/k/a Cool Carriers AB ("NYK Cool"), and Holt Logistics as the named defendants.

The Complaint does not allege the specific roles and duties of each Defendant in the action. Rather, it pleads generally that all Defendants "owned, leased, operated, managed, possessed and/or controlled" the Swan Chacabucco. (SAC ¶ 9.) It also alleges that "all Defendants owned, leased, operated, occupied,

---

[2] Plaintiffs filed a separate identical complaint under Sheeran v. Blyth Shipholding S.A., Civ. No. 15-272 (Jan. 14, 2015), but both cases have since been consolidated under this action. (Stip. [Docket Item 30] ¶ 1.)
[3] The Complaint named the following entities: NYK Container Line, Ltd; NYK Line (North America), Inc.; NYK Cool, a/k/a/ Cool Carriers AB; Cool Carriers Chile SA; Cool Carriers USA Inc.; Chartworld Shipping Corp.; Inchape Shipping Services; and Holt Logistics Corp. (SAC ¶¶ 1-8), along with unnamed entities ABC Companies 1-10 and Def. Companies 1-20. Blyth Shipholding S.A. was later substituted as a named defendant for Chartworld Shipping Corp. (Mar. 11, 2015 Stip. [Docket Item 30] ¶ 2.)

3

maintained, managed and/or otherwise controlled the Ship and/or the Port and specifically maintained, managed, oversaw, directed, controlled, contracted for and/or participated in the operation of stevedoring and/or longshoring services on the Ship and/or at the Port." (Id. ¶ 11.)

Holt Logistics is identified as a "business entity with a registered place of business" in Gloucester City, New Jersey. The Complaint alleges that Holt Logistics and Inchape Shipping "were responsible for training, screening, certifying, hiring and/or providing crane operators and/or other persons involved in stevedoring and/or longshoring operations at the Port." (SAC ¶ 10.)

The Complaint contains three causes of action. Count One alleges negligence. Without identifying each individual defendant's negligent conduct, Count One enumerates 24 duties allegedly violated by all Defendants, including but not limited to: violating OSHA regulations; failing to properly train employees; failing to warn of dangerous and unsafe conditions; failing to "comply with federal and state statutes, local ordinances, and all other rules, enactments, or regulations applicable"; failing to properly supervise; failing to provide adequate safety protection; failing to evaluate the work performed for potential hazards; and negligently controlling the

4

work performed on premises. (Id. ¶ 20.)

Count Two is a personal injury claim brought against all Defendants "in their capacity as 'owner' or 'owner pro hac vice' of the aforementioned Ship" under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(b). (Id. ¶¶ 18-24.) Section 905(b) provides an injured longshoreman with a cause of action against a ship owner for negligence, and Plaintiffs allege that Defendants "owned, operated, managed, possessed and/or controlled the Ship which it operated in the navigable waters of the United States." (Id. ¶ 24.) Finally, Count Three is an action by Sheeran's spouse, Kelly Sheeran, for loss of consortium. (Id. ¶¶ 29-31.)[4]

## III. DEFENDANT'S MOTION TO DISMISS WILL BE GRANTED

Holt Logistics filed this motion to dismiss, arguing that in lumping all of the defendants together and accusing them all of the same general negligent conduct, the Complaint fails to put Holt Logistics on notice of the claims against them, as required by Fed. R. Civ. P. Rule 8(a). (Mot. to Dismiss [Docket

---

[4] Because Plaintiffs allege that the Swan Chacabucco was berthed in the Port of Gloucester, New Jersey when the injuries occurred (SAC ¶ 22), the Court exercises subject matter jurisdiction over Plaintiffs' claims under the maritime jurisdiction statute, 28 U.S.C. § 1333. The Court also has diversity jurisdiction under 28 U.S.C. § 1332, because Plaintiffs are citizens of Pennsylvania and all Defendants have principal places of business outside of Pennsylvania, and the matter in controversy exceeds $75,000. (SAC ¶¶ 1-9; 15.)

Item 36-1] at 8-10.) Defendant also contends that Count Two must be dismissed because the Complaint does not contain any factual basis for its allegations that Holt Logistics is the "ship owner" or "owner pro hac vice" of the Swan Chacabuco for purposes of an LHWCA claim. (Id. at 10-11.)

The Court agrees with Defendant that Plaintiffs' Complaint fails to plead the liability of Holt Logistics with the requisite specificity and must be dismissed.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A to dismiss under Fed. R. Civ. P. 12(b)(6) may be granted if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Although a complaint does not require detailed factual allegations, it must contain enough well-pleaded facts to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must plead enough facts to "raise a reasonable expectation that discovery will reveal evidence of

6

the necessary element," <u>Twombly</u>, 550 U.S. at 556. Although all well-pleaded factual allegations must be accepted as true, the court may disregard any legal conclusions couched as factual allegations. <u>Id.</u>; <u>Iqbal</u>, 556 U.S. at 678; <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009). If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief." <u>Iqbal</u>, 556 U.S. at 679.

Plaintiffs' Complaint fails to separate out the liability for each defendant. Instead, it lumps Defendants together as a group and asserts general common factual allegations against all of them. Count One, for example, contains 24 different allegations of negligence that vary widely, from violation of OSHA regulations to failure to provide a safe work place to failure to properly train employees to failure to supervise to negligent hiring. Rather than specify which Defendants were responsible for which duties, the Complaint merely states that all Defendants were negligent in the enumerated ways. Without any additional guidance as to the Defendants themselves and what functions they performed, it is impossible to untangle Plaintiffs' specific theory of liability against each individual Defendant.

Courts in this district generally agree that this type of "group pleading" does not satisfy Rule 8, because it does not place Defendants on notice of the claims against each of them. See, e.g., Ingris v. Borough of Caldwell, No. 14-855, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) ("[T]o the extent Plaintiff seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done, he has engaged in impermissibly vague group pleading."); Shaw v. Housing Auth. of Camden, No. 11-4291, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) (dismissing complaint because it failed to contain allegations showing how each defendant was liable and noting that "[e]ven under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants." (citing Pietrangelo v. NUI Corp., No. 04-3223, 2005 WL 1703200 (D.N.J. July 20, 2005))); see also H2O Plus, LLC v. Arch Personal Care Prods., L.P., 2011 WL 2038775, at *2 (D.N.J. May 22, 2011) (holding that complaint did not violate Rule 8 because while plaintiff "did lump the Arch Defendants together in the description of facts, looking to the Complaint and the attached exhibits as a whole clearly shows which claims are made against Arch PCP and which against Arch Chemicals.")

Had the Complaint described the nature of each entity

Defendant and precisely what they were responsible for on the Ship, the Court might have been able to infer the theory of liability for each Defendant by comparing the specific role each played on the Swan Chacabucco with the list of duties allegedly breached.[5] But the Complaint does not do even that. Holt Logistics, like the other named Defendants in the case, is identified only as a "business entity" with a registered place of business; the Complaint describes neither its line of work nor its function on the ship. Instead, eight named Defendants are collectively alleged to have "owned, leased, operated, occupied, maintained, managed and/or otherwise controlled the Ship and/or the Port" and to have "maintained, managed, oversaw, directed, controlled, contracted for and/or participated in the operation of stevedoring and/or longshoring services on the Ship

---

[5] For example, had Plaintiffs identified Holt Logistics as the entity responsible for hiring and providing stevedores for work on the Ship, and another Defendant as the entity responsible for the day-to-day supervision of their work, it may have been possible to partially deduce, based on the list of alleged negligent conduct, some of the duties each defendant is alleged to have breached. The only thing that comes close is Plaintiffs' allegation that Holt Logistics and Inchape Shipping "were responsible for training, screening, certifying, hiring and/or providing crane operators and/or other persons involved in stevedoring and/or longshoring operations at the Port." (SAC ¶ 10.) But even this assertion continues to lump Holt Logistics together with an unconnected entity, Inchape Shipping, and asserts seven different duties that either Defendant or Inchape Shipping could have been responsible for. The allegation can hardly be said to narrow down Defendants' liability in this case.

and/or at the Port." (SAC ¶ 11.) The "and/or" conjunction appears no less than five times in this single sentence, making it impossible to determine Plaintiffs' theory of liability for each Defendant – and for Holt Logistics in particular.

Contrary to Plaintiffs' contention (see Opp'n to Mot. to Dismiss [Docket Item 38] at 3), the mere fact that the Complaint recites the type of negligent conduct at issue does not place the parties sufficiently on notice of the claims against them. Even though the misconduct is alleged with some specificity, Rule 8 is not satisfied because the allegations do not inform each Defendant of the particular claims against it. Moreover, lumping all defendants together for different misconduct fails to demonstrate each defendant's individual liability. Without pleading how, if at all, Holt Logistics was involved with the alleged conduct at issue, the Complaint lacks sufficient facts to draw a reasonable inference that Holt Logistics is actually responsible for any the negligence alleged. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement [under Rule 8(a)(2)] that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (quoting Twombly, 550 U.S. at 555)).

Nor is the Court persuaded by Plaintiffs' citations to In re Riddell Concussion Reduction Litig., 77 F.3d 422 (D.N.J. 2015) (Simandle, J.), and the two unpublished district court opinions, Capitol Records LLC v. ReDigi Inc., No. 12-95, 2014 WL 4354675 (S.D.N.Y. Sept. 2, 2014), and Toback v. GNC Holdings, Inc., No. 13-80526, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013), which have little weight in this Circuit. In Riddell, this Court rejected an argument that the complaint violated Rule 8 by lumping all defendants together without specifying the alleged misconduct of each defendant, because it was "apparent" that the claims were asserted against all defendants "for their concerted conduct under the 'Riddell' brand." 77 F. Supp. 3d at 431. The Court emphasized that group pleading was permissible in that particular case because the defendants did not dispute their collective role in the manufacture, sale, and marketing of the product in question, and they were related entities operating under a single brand, accepting service as a single entity, and represented by the same counsel. Id. at 432. Capitol Records and Toback similarly involve closely related Defendants. See Capitol Records, 2014 WL 4354675, at *3 (noting that the defendants were a small start-up and two corporate officers "who directed and controlled essentially all of its activities"); Toback, 2013 WL 5206103 (holding that complaint satisfied Rule 8 despite

11

referring to defendants – GNC Holdings, Inc., GNC Corp, General
Nutrition Corporation, and General Nutrition Centers, Inc. –
collectively as "GNC" because defendants were interrelated
corporate defendants and demonstrated their understanding of the
allegations against them).

Riddell, Capitol Records, and Toback provide no support
that collective-style pleading is permissible in this case,
since there are no allegations that Defendants acted jointly or
in concert or are closely related corporate entities, such that
conduct by one may be ascribed to the others.[6] See T.J. McDermott
Transp. Co., Inc. v. Cummins, Inc., 2015 WL 1119475, at *7
(D.N.J. Mar. 11, 2015) (holding Rule 8 was satisfied even though
complaint failed to distinguish defendants' respective conduct
because complaint specifically alleged that defendants formed a
partnership).

Because Counts One, Two, and Three all suffer from the same
infirmity by asserting that the injuries sustained by Plaintiff
"were caused by the carelessness and negligence of all
Defendants," (SAC ¶ 23), and failing to allege any specific act
of misconduct by Holt Logistics, the Complaint as a whole must

---

[6] The fact that Defendants are all represented by different
counsel and that no other defendant has joined Holt Logistics'
motion to dismiss is an additional indication that Defendants
are independent and concerted action is lacking.

be dismissed for failing to place Holt Logistics on notice of the claims against it.

Count Two of the Complaint must additionally be dismissed because Plaintiffs have not pleaded sufficient facts to establish a plausible cause of action against Holt Logistics under the Longshore and Harbor Workers' Compensation Act. Specifically, the Complaint does not plead that Holt Logistics qualifies as a "vessel" for purposes of the LHWCA. (Mot. to Dismiss at 10-11; Reply in Supp. of Mot. to Dismiss [Docket Item 40] at 6-7.) Section 905(b) of the LHWCA codifies the exclusive remedy for longshoremen and permits an "action against [a] vessel as a third party" for injuries "caused by the negligence of [such] vessel." 33 U.S.C. § 905(b). The LHWCA, in turn, defines a "vessel" within the meaning of section 905(b) to include the "vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member." 33 U.S.C. § 902(21).

A "vessel owner pro hac vice" is "one who assumes by charter or otherwise exclusive possession, control, command and navigation of the vessel for a specified period of time." DeArmond v. Southwire Co., 109 Fed. App'x 722, 724 (6th Cir. 2004) (internal quotations and citation omitted); see also Bossard v. Port Allen Marine Serv., Inc., 624 F. 2d 671, 672-73

13

(5th Cir. 1980) ("[T]he charterer takes over the ship, lock, stock and barrel, and mans her with his own people. He becomes . . . the owner pro hac vice." (internal quotations and citation omitted)); Irby v. Tokai Lines, No. 88-6890, 1990 WL 18880, at *3 (E.D. Pa. Feb. 23, 1990) (noting requirement of "exclusive possession, control, command, and navigation"). The term "vessel," in other words, encompasses "the ship's owner and the owner's agents." Browning v. Safmarine, Inc., No. 11-2436, 2012 WL 6089481, at 3 n.1 (D.N.J. Dec. 5, 2012).

This Court recently had occasion to explicate the duties of the "vessel" and the "pro hac vice owner" to an offloading stevedore under the LHWCA in Jones v. Sanko Steamship Co., ___ F. Supp. 3d _____, 2015 WL 8361745 (D.N.J. Dec. 8, 2015). The LHWCA requires that the liability of defendants be separately determined in light of their respective functions relating to the ship and its cargo. Id. at 7-8. Such an assessment of LHWCA duties for a particular defendant is not viable where the plaintiff engages in group pleading against unrelated, disparate parties.

Count Two alleges only that all Defendants, including Holt Logistics, "owned, operated, managed, possessed and/or controlled the Ship which it operated in the navigable waters of the United States." (Id. ¶ 24) (emphasis added). This assertion,

14

however, does not rule out the possibility that Holt Logistics
merely "controlled" the Ship. Generally speaking, "those who
exercise control over a vessel for a particular purpose such as
repairing, cleaning or unloading are not considered to be owners
pro hac vice." DeArmond, 109 Fed. App'x at 725. In DeArmond, the
Sixth Circuit gave the example of a stevedore hired to unload a
barge and who exercises control and dominion over the barge in
order to do so, and noted that the stevedore was clearly not an
owner pro hac vice. The Court explained that this was because
even though a party may "control command and navigate the vessel
while it is in their possession to accomplish the designated
task, the owner of the vessel has not relinquished complete
dominion and control of the vessel tantamount to a demise of the
vessel." Id. Because the Complaint fails to contain a well-
pleaded factual allegation that Holt Logistics was the owner or
owner pro hac vice of the Swan Chacabucco, Plaintiffs have not
stated a plausible claim for relief under Count Two.

For all the reasons above, Defendant's motion to dismiss
will be granted in its entirety. The Court will, however,
dismiss Plaintiffs' claims against Holt Logistics without
prejudice and permit Plaintiffs to file a motion to amend, along
with a Proposed Amended Complaint which corrects the multiple
deficiencies discussed herein. In so doing, the Court again

15

emphasizes that it is not sufficient to fail to identify each defendant's role and function or say that each of the defendants is responsible for everything. Plaintiffs must be careful to specify the basis (i.e., the factual grounds) for Defendant's liability under each Count.

## IV. THE COURT WILL DENY DEFENDANT'S MOTION FOR SANCTIONS

Defendant argues that sanctions are warranted because there are no facts to support Plaintiffs' claim that Holt Logistics was in any way liable for Sheeran's injury. (Mot. for Sanctions [Docket Item 49-1], at 9-12; Reply in Support of Mot. for Sanctions [Docket Item 53], at 4-9.)

Federal Rule of Civil Procedure 11 requires an attorney to conduct a "reasonable inquiry" into the law and facts before filing a pleading with the court, and to certify that the legal arguments contained therein are not being presented for any improper purpose and are not frivolous, and the factual contentions have or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(1)-(3). By discouraging the filing of frivolous, unsupported, or unreasonable claims, and permitting sanctions to be imposed for violations, Rule 11 "seeks to strike a balance between the need to curtail abuse of the legal system and the need to encourage creativity and

16

vitality in the law." Fed. R. Civ. P. 11(c); <u>Gaiardo v. Ethyl</u>
<u>Corp.</u>, 835 F.2d 479, 483–84 (3d Cir. 1987); <u>see also</u> <u>Lieb v.</u>
<u>Topstone Indus. Inc.</u>, 788 F.2d 151, 157 (3d Cir. 1986); <u>Leuallen</u>
<u>v. Borough of Paulsboro</u>, 180 F. Supp. 2d 615, 618 (D.N.J. 2002).

When evaluating whether conduct violates Rule 11, the Third
Circuit applies a "reasonableness under the circumstances"
standard, which is defined as "an objective knowledge or belief
at the time of the filing of a challenged paper that the claim
was well grounded in law and fact." <u>Ford Motor Co. v. Summit</u>
<u>Motor Prod., Inc.</u>, 930 F.2d 277, 289 (3d Cir. 1991). The wisdom
of hindsight should be avoided, and the attorney's conduct must
be judged by "what was reasonable to believe at the time the
pleading, motion, or other paper was submitted." Fed. R. Civ. P.
11 advisory committee note; <u>Mary Ann Pensiero, Inc. v. Lingle</u>,
847 F. 2d 90, 94 (3d Cir. 1988).[7]

The Court does not find that the circumstances of this case
meets the "high standard for imposing sanctions under Rule 11,"

---

[7] The Court notes that Defendant has complied with the "safe
harbor" provision of Rule 11, which requires a moving party to
notify the party against which it seeks sanctions of its
intention to move for sanctions, and allows the non-moving party
21 days to take remedial action before the court imposes
sanctions. Fed. R. Civ. P. 11(c)(2); <u>see</u> <u>Hockley by Hockley v.</u>
<u>Shan Enterp. Ltd.</u>, 19 F. Supp. 2d 235, 240 (D.N.J. 1998).
Defendant sent a "safe harbor" letter together with a copy of
the motion on September 18, 2015, 25 days before filing the
instant motion with the Court. (<u>See</u> Sept. 18, 2015 Letter, Ex. 1
to Mot. for Sanctions [Docket Item 49-2].)

<u>Oswell v. Morgan Stanley Dean Witter & Co., Inc.</u>, 507 F. Supp.2d
484, 492 (D.N.J. 2007) (Simandle, J.). Counsel for Plaintiffs
had a good-faith basis to believe that Defendant had a hand in
controlling stevedoring activities at the site where Steven
Sheeran was injured. In particular, it was reasonable for
counsel to believe that the operations of Sheeran's employer,
Gloucester Terminals, LLC, at the Port of Gloucester, were being
overseen by Holt Logistics. The N.L.R.B. decision, upon which
counsel asserts he relied, describes the involvement of the Holt
brothers and their various companies (including Holt Logistics)
in operations in and around the Port of Gloucester, where the
Swan Chacabucco was berthed. (Ex. 1 to Opp'n to Mot. for
Sanctions [Docket Item 52-2].) The decision identifies Holt as
the CEO of Gloucester Terminals, LLC, and also identifies an
individual named Walter Curran who was hired by Holt and who
"actively managed" the work of Gloucester Terminals, LLC. (<u>Id.</u>
at 9.)

   Thus, Defendant's argument that Sheeran, who has already
settled a claim with Gloucester Terminals, LLC, is barred from
asserting a claim against Holt Logistics,[8] holds no water.

---

[8] Specifically, Defendant argues that because a plaintiff who
recovers against an employer under LHWCA worker's compensation
scheme is barred from suing that employer under the LHWCA for
further damages, <u>see</u> 33 U.S.C. §§ 904(b), 905(a), counsel lacked
a good-faith basis to file suit against Holt Logistics because

Counsel for Plaintiffs had a good-faith basis to believe that Holt Logistics was not Sheeran's employer "via common ownership" with Gloucester Terminals, LLC, but rather an entity that owned and supervised Sheeran's employer and its stevedoring operations. Counsel thus had a reasonable basis to believe that Sheeran's settlement with his direct employer did not extinguish his rights under the LHWCA to file suit against Holt Logistics.

Counsel's belief that Holt Logistics should remain in the action is also not unreasonable under the high Rule 11 standard. Counsel notes that depositions taken after the Complaint continue to raise the possibility that Gloucester Terminals, LLC was managed by Holt Logistics, because certain higher-level employees seemed to be affiliated with both entities. While depositions from individuals employed by Gloucester Terminals, LLC, identified John Florkiewicz and P.J. Inskeep as the stevedore manager and Vice President of Gloucester Terminals, LLC, respectively, both had Holt Logistics-affiliated email addresses. (Quigley Dep., Ex. 3 to Opp'n to Mot. for Sanctions [Docket Item 52-4], at 39:8-41:9; Mountney Dep., Id. Ex. 4 [Docket Item 52-5], at 20:8-21:2.) Moreover, an operations representative for Defendant Inchape Shipping identified

---

Sheeran had already settled a claim with Gloucester Terminals, LLC, and Holt Logistics was his co-employer. (Opp'n to Mot. for Sanctions, at 11-12.)

Florkiewicz and Inskeep as being from Holt Logistics, and additionally testified that he copied several people from Holt Logistics on every email that he sent regarding vessel movements and berthing details. (Hubbard Dep., Id. Ex. 2 [Docket Item 52-3], at 53:20-56:7.)

Given the evidence indicating a close relationship between Defendant and Sheeran's employer, it was not palpably unreasonable for Plaintiffs' counsel to believe that Holt Logistics maintained some supervisory role over the stevedoring work of Gloucester Terminals, LLC. Although counsel may not have had a precise understanding of Holt Logistics' responsibilities, it was not unreasonable for counsel to infer that Defendant had a separate duty to ensure the safety of the premises, and that the duty was breached.

"Rule 11 is intended for only exceptional circumstances," Gaiardo, 835 F.2d at 483, and a "district court must exercise discretion and sound judgment in dealing with the myriad methods with which lawyers may abuse the judicial process." Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 540 (3d Cir. 1985). While it remains to be seen whether Plaintiffs can plead sufficient facts to plausibly establish Holt Logistics' liability in this case, the Court is satisfied that counsel did not drag Holt Logistics into this case based solely upon

unsupported, unreasonable, and frivolous allegations. Defendant's motion for sanctions is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion to dismiss. The dismissal is without prejudice to Plaintiffs' right to file a motion for leave to file an Amended Complaint within fourteen (14) days of the date of entry of this Order, accompanied by a Proposed Amended Complaint which remedies the deficiencies discussed herein. The Court will deny Defendant's motion for sanctions, but takes this opportunity to remind counsel that any attempt to replead against Holt or any other defendant is governed by the requirements of Rule 11(b), including that the legal claims are warranted by existing law and that the factual contentions have evidentiary support or (if specifically identified) will likely have evidentiary support after a reasonable opportunity for further investigation or discovery, see Rule 11(b)(2) & (3), Fed. R. Civ. P. An accompanying Order will be entered.

December 16, 2015                         s/ Jerome B. Simandle

Date                                      JEROME B. SIMANDLE
                                          Chief U.S. District Judge

21